UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANPOLIS DIVISION

FILED
MAR 13 2018
U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Cause No. |
| | ) |
| v. | ) Violation: Title 18, United States Code, Section 1343 |
| | ) |
| NORMAN BURGESS, | ) 1:18-cr-0072 WTL -MJD |
| Defendant. | ) |

## INDICTMENT

### GENERAL ALLEGATIONS

The Grand Jury charges:

1. At times material to this indictment:

   a. Defendant NORMAN BURGESS was the Treasurer of the Wayne Township Volunteer Fire Department (the "WTVFD"). The WTVFD is an all-volunteer fire department located within the Southern District of Indiana in Hamilton County, Wayne Township, and protects the unincorporated areas east of Noblesville and north of Fishers, Indiana.

   b. As Treasurer of the WTVFD, defendant BURGESS worked in Noblesville, Indiana, and was entrusted with managing the WTVFD's payroll, paying its vendors, and purchasing equipment. Defendant BURGESS had access to the WTVFD's payroll and accounts payable systems, and had access to and signature authority for the WTVFD's business bank accounts at BMO Harris Bank, First Merchants Bank, and Key Bank. Defendant BURGESS further had access to the WTVFD's automated teller machine ("ATM") debit cards and checks that withdrew funds from its BMO Harris Bank, First Merchant's Bank, and Key Bank business bank accounts. Defendant BURGESS was authorized to use the WTVFD's business bank

accounts and ATM cards, and the funds within them, for payroll and business expenses only.

   c. Between on or about January 2015, and on or about January 31, 2016, defendant BURGESS maintained a personal bank account at JP Morgan Chase.

  2. Beginning in or about January 2013, and continuing until in or about December 31, 2016, in the Southern District of Indiana, Indianapolis Division, and elsewhere,

NORMAN BURGESS,

defendant herein, devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme is further described below.

  3. It was part of the scheme that between on or about January 4, 2013, and continuing until on or about October 31, 2016, defendant BURGESS falsely represented that he was entitled to $59,656.49 in payroll payments, when he was not. As part of the scheme, BURGESS issued 112 checks to himself to which he was not entitled, and falsely represented in many of the checks' memo lines that the payments were for "payroll" expenses, when they were not. As a result of his false representations, BURGESS received $59,656.49 in unauthorized payments from the WTVFD.

  4. It was further part of the scheme that on or about November 4, 2013, BURGESS used the WTVFD's business ATM card to pay $568.30 to Forest Lawn Memory Gardens under the false pretense that they were business expenses, when in fact, they were used to pay funeral expenses for BURGESS' deceased relative.

  5. It was further part of the scheme that between on or about July 10, 2015, and continuing until on or about July 13, 2015, defendant BURGESS falsely represented that the

WTVFD authorized a $1,500 cash payment to the Lapel Community Association Village Fair, when it did not. As a result of his false representation, defendant BURGESS withdrew $1,500 from the WTVFD's Key Bank checking account, and deposited the cash into his personal banking account at JP Morgan Chase. Defendant BURGESS falsely represented in the memo line of the check that he intended to use the funds for the Lapel Community Association Village Fair when in fact, BURGESS intended to deposit the funds into his personal checking account for his own personal use.

6. It was further part of the scheme that between on or about March 22, 2013, and continuing until on or about August 3, 2016, defendant BURGESS falsely represented that the WTVFD authorized eight checks issued to "Cash" for WTVFD business expenses, when it did not. As part of the scheme, BURGESS falsely represented in the checks' memo lines that the cash withdrawals were for "Petty Cash," when in fact, the WTVFD does not maintain a petty cash account. As a result of his false representations, BURGESS received $2,708.47 in unauthorized funds from the WTVFD's business bank accounts.

7. It was further part of the scheme that between on or about January 9, 2013, to November 2, 2016, defendant BURGESS made 226 unauthorized cash withdrawals from the WTVFD's business bank accounts under the false pretense that they were for business expenses, when they were not. As part of the scheme, BURGESS used the WTVFD debit cards to make 218 unauthorized cash withdrawals totaling $64,616.70, which he used for his own personal expenditures. BURGESS further issued four unauthorized checks made payable to "Cash" totaling $5,250, and falsely represented that the payments were for "Kitchen Supplies" and "Kitchen Stuff." BURGESS further obtained four unauthorized cash withdrawals totaling

3

$1,267.00 through checking account withdrawal forms he submitted to the WTVFD's business bank accounts. In total, BURGESS received approximately $71,133.70 in unauthorized funds which he either deposited into his personal checking account at JP Morgan Chase or kept in cash.

8. It was further part of the scheme that between on or about August 11, 2014, and continuing until on or about October 17, 2016, defendant BURGESS used the WTVFD's debit cards to make 104 unauthorized purchases totaling $3,983.66 from Amazon.com under the false pretense that they were business expenditures, when the purchases were for his own personal use, such as sports memorabilia, a keyless FOB for a Chrysler vehicle, a political flag and costume mask, and an Iron Maiden key chain.

9. It was further part of the scheme that defendant BURGESS did misrepresent, conceal, and hide, and caused to be misrepresented, concealed, and hidden, acts done in furtherance of the scheme and the purpose of those acts.

## COUNTS ONE THROUGH SIX
## (Wire Fraud, 18 U.S.C. § 1343)

10. Paragraphs 1 through 9 of the General Allegations in this Indictment are incorporated here as if set out in full.

11. On or about the dates specified below, NORMAN BURGESS, the defendant, for the purpose of executing the aforesaid scheme and artifice, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, and signals, as more particularly described below, pertaining to the clearing of checks drawn or cash withdrawals made on the Wayne Township Volunteer Fire Department's business bank accounts at BMO Harris Bank, First Merchants Bank, and Key Bank:

| Count | Approximate Date | Amount |
|---|---|---|
| 1 | August 20, 2015 | $340.34 check drawn from First Merchants Bank |
| 2 | November 4, 2013 | $568.30 debit drawn from BMO Harris Bank |
| 3 | July 10, 2015 | $1,500 check drawn from Key Bank |
| 4 | January 15, 2014 | $673.47 check drawn from BMO Harris Bank |
| 5 | September 19, 2014 | $503.00 debit drawn from BMO Harris Bank ATM card |
| 6 | January 20, 2016 | $136.17 debit drawn from Key Bank |

Each Count in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATION

1. The allegations of Counts One through Six are incorporated here for the purpose of alleging forfeiture to the United States pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

2. As a result of the violations as alleged in Counts One through Six of the foregoing indictment,

NORMAN BURGESS,

defendant herein, shall forfeit to the United States any and all right, title, and interest he may have in any property, real and personal, which constitutes and is derived from proceeds traceable to the offenses charged in Counts One through Six.

3. The interests of defendant subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) as incorporated by Title 28, United States Code,

Section 2461(c), include but are not limited to approximately $139,550.89.

4. If any of the forfeitable property described above, as a result of any act or omission by defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c);

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL:

FOREPERSON

JOSH J. MINKLER
United States Attorney

By: *[signature]*
Tiffany J. Preston
Assistant United States Attorney